Casey, Oh. J.,
delivered the opinion of the court:
The claimant was a resident of McMinnville, Tennessee, and had a cotton factory there, which was destroyed in the spring of 1862, by order of General Bosecrans. From the spring of 1862 till the end of the war, McMinnville was alternately in the hands of the Union and insurgent forces. In the fall of 1863, he went to reside in Nashville, and continued to reside there till the end of the rebellion. He employed Ira G. Wood, who lived near Winchester, Tennessee, in 1863 and 1864, to buy cotton for him. Wood had this cotton, ten bales, bought for him, and stored at Point Bock, Jackson County, Alabama, and which were taken and seized by the military authorities and *615 shipped. Other cotton belonging to the claimant was taken at the same time, but upon application by Mr. Faulkner to the military commander, and satisfying Him that he was a loyal’ man, the other cotton was delivered up to him. These ten bales were shipped to the Treasury agent and sold, and the net proceeds amount to the sum of $2,301 15, and these are claimed in this case.
The loyalty of Faulkner is abundantly proved. The ownership and seizure, and payment of the proceeds into the Treasury, are all fully made out. And the only defence set up is that McMinnville and Nashville, where the claimant resided, were within the Union lines, and Point Bock, where the cotton was bought, stored, and seized, was within the rebel lines, and so its purchase for the claimant was a breach of the non-intercourse laws, and rendered the property subject to capture and forfeiture.
Whether trade between the inhabitants of the places designated at the times referred to was illegal and interdicted, must depend upon the acts of Congress forbidding commercial intercourse between the belligerents, the proclamations of the President issued in pursuance of these acts, the actual occupation by the one or the other of the forces at any particular time, the nature of the occupation, and the true construction to be given to thé acts and proclamations on this subject.
By the proclamation of April 15,1861, it was declared that the laws of the United States were opposed by combinations too powerful to be suppressed by the ordinary course of judicial proceeding in the States of South Carolina, Georgia, Alabama, Florida, Mississippi, and Louisiana, and the militia of the several States was called forth for that purpose. (See 12 Stat. L., p. 1258.) By another proclamation, on the 19th of the same -month, a blockade of all the ports of those States was declared; and vessels attempting to violate the blockade were declared to be subject to capture, and to be sent to the nearest and most convenient port for proceedings against them and their cargo, as prize of war. On the 27th April, 1861, the blockade was extended to the ports of Virginia and North Carolina.
By the act of July 13, 1861, sec. 5, it was provided “that it may and. shall be lawful for the President by proclamation to declare that the inhabitants of such State, or any section or part thereof, where such insurrection exists, are in a state of *616 insurrection against the United States; and thereupon all commercial intercourse by and between the same and the citizens thereof, and the citizens of the rest of the United States, shall cease and be unlawful, so long as such condition of hostility shall continue; and all goods and chattels, wares and merchandise, coming from said State or section into the other parts of the United States, and all proceeding to such State or section, by land or water, shall, together with the vessel or vehicle conveying the same, or conveying- persons to or from such State or section, be forfeited to the United States.” (12 Stat. L., p. 257.)
By an addition to this act passed on 31st July, 1861, it was further provided u that the power of the President to declare the inhabitants of any State, or any part thereof, in a state of insurrection, as provided in the fifth section of the act to which this is in addition,-, shall extend to, and include the inhabitants of any State or part thereof, where such insurrection against the United States shall be found by the President at any time to exist.”
On the 16th August, 1861, the President issued his proclamation, declaring “that the inhabitants of the said States of Georgia, South Carolina, Virginia, North Carolina, Tennessee, Alabama, Louisiana, Texas, Arkansas, Mississippi, and Florida, (except the inhabitants of that part of the State of Virginia lying west of the Alleghany Mountains, and of suoh oilier parts of that State and the other States hereinbefore named as may maintain a loyal adhesion to the Union and the Constitution, or may be, from time to time, occupied and controlled by forces of the United States, engaged in the dispersion of such insurgents,) are in a state of insurrection against the United States, and that all commercial intercourse between the same and the inhabitants thereof, with the exceptions aforesaid, and the citizens of other States, and other parts of the United States, is unlawful, and will remain unlawful, until such insurrection shall cease, or has been suppressed.” All goods passing to or fro in violation of this proclamation, and the vessel or vehicle conveying the same, were made liable to capture and forfeiture.
By the act 2d June, 1862, for collection of-direct taxes, Ssc., it was made the duty of the President, on or before the 1st July, 1862, to declare by proclamation in what States or parts of States insurrection exists. (12 Stat. L., p. 422.) On July 1, 1862, a *617 proclamation was issued by the President, in pursuance of this statute, in which the entire States of Tennessee and Alabama, without exception, are included. (12 Stat. L., p. 1266.)
On the 12th May, 1862, the President by proclamation declared the ports of New Orleans, Port Boyal, and Beaufort open, and trade under certain regulations there allowed. (12 Stat. L., p. 1263.)
On the 2d April, 1863, President Lincoln issued a proclamation, reciting that “experience has shown that the exceptions made in and by said proclamation, (16th August, 1861,) embarrass the due enforcement of said act of 13th July, 1861, and the proper regulations of the commercial intercourse authorized by said act, with the loyal citizens of said States.” This proclamation then designates the States in insurrection, including Alabama and Tennessee, without exception. He then declares that the inhabitants of the.States named “ are in a state of insurrection against the United States, and that all commercial intercourse, not. licensed and-conducted as provided in said act, (13th July, 1861,) between the said States and the inhabitants thereof, with the exceptions aforesaid, and the citizens of other States, and other parts of the United States, is unlawful, and will remain unlawful, until such insurrection shall cease or has been suppressed, and notice thereof has been duly given by proclamation; and all cotton, tobacco, and other products, and all other goods and chattels, wares and merchandise, coming from any of said States, with the exceptions aforesaid, into other parts of the United States, or proceeding to any of said States, with the exceptions aforesaid, without the license and permission of the President, through the Secretary of the Treasury, will, together with the vessel or vehicle conveying the same, be forfeited to the United States.”
This proclamation clearly annulled and avoided all the previous exceptions not continued. There being none in this proclamation applicable to the States of Alabama and Tennessee, it follows that the entire territory of those States was included in the insurrectionary territory, and subject to the restrictions on commercial intercourse imposed by the act 13th July, 1861, and the proclamations issued in pursuance of it. This being so, there was no more restriction or restraint upon a loyal man residing in any part of either of those States from purchasing cotton either by himself or his agent, in any other portion of *618 either of said States, whether the place where he resided, or that where the property was bought and was situated at the time of purchase, was occupied and controlled by the Union forces or not, than there was in relation to similar purchases in Charleston, Mobile, or Savannah, before the capture of those places by the Union Army. McMinnville, Tennessee, and Paint Bock, Alabama, being alike rebel territory, the restrictions on commercial intercourse did not apply to the purchase in this case. If this were at all doubtful on the acts and proclamations already recited, it is rendered entirely certain by subsequent enactments and proclamations.
The Joint Resolution of Congress, approved, 8th February, 1865, recites in the preamble: “Whereas the-inhabitants and local authorities of the States of Virginia, North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Texas, Arkansas, and Tennessee, rebelled against the Government of the United States, and were in such condition on the 8th day of November, 1864, that no valid election for electors of President and Vice-President of the United States, according to the Constitution and laws thereof, was held therein on said day; therefore,” &c. And on the ground of the facts so recited, the electoral votes of those States were excluded.
The first act or proclamation I find removing the restrictions and changing the status of persons and things is the proclamation of 13th June, 1865. It contains this clause: “And I hereby proclaim and declare that the insurrection, so far as it relates to, and within the State of Tennessee, and the inhabitants of the said State of Tennessee, as reorganized and constituted under the recently adopted constitution and reorganization, and accepted by them, is suppressed; and therefore, also, that all the disabilities and disqualifications attaching to said State, and the inhabitants thereof, consequent upon any xsrocla-mation issued by virtue of the fifth section of the act entitled, ‘An act further to provide for the collection of duties on imports, and for other purposes,’ approved the 13th day of July, 1861,.are removed.”
These citations show very clearly that from the issuing of the proclamation of 2d April, 1803, withdrawing all the exceptions contained in the proclamation 16th August, 1861, until the date of the last-recited proclamation, 13th June, 1865, all- *619 parts of tbe States of Tennessee and Alabama constituted a part of tbe insurrectionary territory; that there was no part or portion of either to which the non-intercourse laws applied, as regarded the inhabitants and residents of those States. And as that period of time covers all these transactions of the purchase and storage of this cotton by Mr. Faulkner and its capture, the defence must fail. It is but the ordinary case of a loyal man residing in the insurrectionary territory, purchasing property and dealing within that territory. The cases both in this court and the Supreme Court recognized the right of parties so situated to buy and acquire property, and, if captured, and they make the requisite proof of loyalty, ownership, and payment of proceeds into the Treasury, they are entitled to recover. These proofs are clear and ample in this case as to ten bales, and he should recover the net proceeds, amounting to $2,301 15.